Our next case is number 201127 United States v. TREK LEATHER Okay, Mr. Gallivan. Yes, sir. Wait just a moment while I get settled here. Okay. JOHN GALLIVAN Good morning. My name, please record, my name is John Gallivan. I'm a member of the law firm of Gallivan & Malosky Council for Defendant Appellant, Mr. Harish Chattopoury. This case on appeal raises, well, first the facts of the case are relatively simple. Mr. Chattopoury is the president and sole shareholder of the corporate importer of record TREK Leathers Incorporated. TREK was found by the Trial Court of International Trade to have grossly, through gross negligence, violated the penalty provisions of Section 1592 of Title 19. In that, TREK omitted to include in the dutyable value of the imported wearing apparel certain fabric assists. The court found the corporation's omission was occasioned by gross negligence. In so holding, however, the court also found that Mr. Chattopoury, the president's sole shareholder, was jointly and severally liable with the corporate importer of record. This is based on an omission. The obligation to disclose that information arises from what? 19 U.S.C. 14, whether it's 1484 or 1485, all importer of records have to disclose any information that's material to classification, in this case the valuation of the imported merchandise, specifically fabrics and other components of suits. But those sections only apply to TREK in this case. Those sections only apply, as this court has stated time and again, only to the, quote, importer of record, close quote, which in this case is TREK. And you concede liability? Oh, yes, Your Honor. Vis-a-vis the corporate entity, yes, Your Honor. Okay. But what the United States is saying, if I understand correctly, is that quite apart from the client violated the statute directly, subsection 1A1A, right? That's correct. So what's wrong with that? I mean, maybe there's no aiding and abetting liability for the reasons that you say, but what about direct liability under the statute? The issue of the scope of 1592A1A I don't believe has been directly addressed by this court. Is that provision a penalty provision only, or can it independently stand as a cause of action? That's a penalty provision. It's been around since, I believe, the actual enactment of the 1930 Tariff Act, and predecessor provisions like it. So if it's just a penalty provision that only applies to importers of record, why didn't they use the word importers of record with respect to 1592A rather than person? Well, they used the term person attempting to enter the merchandise specifically. No person may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States. Doesn't that apply to your clients? I'm sorry? Doesn't that apply to your clients? Well, I think it would apply to smugglers. You think it would apply? To smugglers. To smugglers. Yeah. We're not dealing with smugglers. No, we're not, thank goodness. Doesn't it apply to your clients? Let's leave the smugglers at home. I believe it does not apply to any party other than the corporate importer of record in this case, the formal importer of record, with the following exceptions, Your Honor. Does the statute define who is a person? No, it does not. Okay. The first exception would be, and this was not addressed by the court below, although it has been addressed by Chief Judge Rustani in a similar case, where a shareholder, in this case a sole shareholder or a corporate officer, has been found liable regardless of the degree of culpability, negligence, gross negligence, fraud. It's when the court has conducted what's called a formal bail-piercing analysis, and the court has determined that the corporate officer, the shareholder, is nothing more than the alter ego of the corporation. Hold it right there for a moment. Help me understand something. Do you understand an alter ego is the same thing as a pierced corporate veil, or are these two different concepts? No, they're synonymous. They're synonymous. Yes, Your Honor. Okay, go ahead. As Judge Rustani had stated, in agency security versus Fleming, in those instances where the veil is pierced, where the corporate shareholder is determined to be the mere alter ego of the corporation, corporate importer of record, that shareholder can be held personally liable. Why can't the shareholder who directs the activities of the corporation be held liable under 1592-81? I believe he can, where the facts support that conclusion. There was no analysis. There was no inquiry. There was no allegation that Mr. Schiattopori was the alter ego of the corporation. No, I'm not talking about alter ego. I'm saying a corporate officer directs the activities of the corporation, and there's no veil piercing. Why isn't that sufficient to create liability under 1592-81 if the officer directs the corporation to do these things here? Then I think we've simply unknowed the 50 states, BCLs, corporate law 101. I formed a corporation in order to insulate myself from total personal liability. My liability is limited to my investment in the corporation. Now, of course, there are exceptions to that rule, such as the piercing of the veil. But to read no person may enter, introduce, or attempt to enter or introduce, that's including the world. I submit, Your Honor, that one can take that concept all the way to the conclusion that someone in New York City who purchased one of these imported garments, these suits, by purchasing it, theoretically, is liable under the statute. Is it your better argument that one can't be negligent in its failure to take an act or in its taking of an act absent the breach of a duty, and the duty in this case only arises by virtue of the statutory provisions that require disclosure? Well, I think you're absolutely correct. You're taking the concept in 1592A1B, talking about a party other than the importer of record aiding or abetting, in this case the corporate importer of record. This, of course, is stated in Hitachi America that you can't abet anything but fraud. You can't abet negligence or gross negligence. It doesn't legally, logically follow because of the absence of the necessary intent. The government's not disputing that. I'm sorry? The government's not disputing that. They're not saying that your client is liable as an aider and abetter. The government is saying he's directly liable under 1592A1. Well, the government's argument has evolved. They seem to have given up on the aiding and abetting concept. Their client's position, U.S. Customs' position in interpreting this statute, is that anyone and everyone is a person potentially liable for violating 1592A, regardless of whether they're the importer of record or not. Yeah, it seems to me the government's getting there two ways, but we'll have an opportunity to hear from the government. A, any person means any person, and B, in your client's case, he's the alter ego of Trek, and therefore since Trek is liable as a person who's done this, then your client, your individual client, is equally liable because he's the alter ego, i.e., we're going to pierce the corporate veil, although admittedly the trial judge didn't go through quite all the usual steps for doing that. Well, again, I believe the law is painfully clear that the trial judge has to apply. In this case, it was a New York State corporation, so New York State law relative to piercing. In some states, it's easier to pierce than the others. And your position is you can't call somebody an alter ego unless you first pierce the corporate veil? Unless you do the, in this case, the New York State corporate piercing analysis. And the government didn't really allege our alter ego status, did they? They just said that he was a person under 1592. The government has threatened to do the same in other cases I've represented clients on. All right, so you're saying that he could have been liable either if the government had proved that he is effectively the alter ego of the importer of records, the corporation, or he could have been liable if the government had proved fraud. Yes, Your Honor. But because both the trial court and the government opted for this shortcut route of a negligence claim, he can't be liable? That's correct, Your Honor. The government never alleged that the veil should be pierced, that Mr. Schiapare was the alter ego, and no analysis was done by the trial court as to that point. The analysis done, factual analysis by the trial court, was that there were material facts in issue as to whether or not the omissions in question were occasioned by fraud. And the trial court, I think, correctly found that there were material facts in issue. Accordingly, it denied the partial denial of the government's motion for summary judgment as to the account for fraud. Okay. Thank you, Mr. Galvin. Thank you for a little bit of your time for rebuttal. Mr. Tozzini, is that the right pronouncement? Tozzini. Tozzini. May it please the Court, Mr. Schiapare is essentially contending that corporate officers owe no duty of care when they enter, introduce, or attempt to enter or introduce merchandise into the commerce of the United States, and the statute simply does not support that contention. Well, that's not what he's saying, really, is he? He's saying that this statute is a penalty provision as it relates to the other statutes, which are drafted to apply to the importer of records. Well, we respectfully disagree with that contention. And if you look at Section 1592A, that section is entitled Prohibition. So it's a prohibition upon certain actions. And the actions here that are prohibited are entering, introducing, or attempting to enter or introduce merchandise into the United States. Yeah, but I guess what he's saying is that only the importer of record can do those things and that a corporate officer can't. So, I mean, the statute reads on entering, enter, introduce, or attempt to enter or introduce. The question is, can an individual corporate officer do those things or can only the importer of record, that is the corporation, do those things? An individual officer of the corporation can certainly do those things. And, in fact, Mr. Choudhury raised the AGIS. How do we know that? I mean, we've not construed this provision, right? I mean, the first A1. The court has not construed this provision, but by raising the AGIS decision in his reply brief, Mr. Choudhury essentially contended that also he could not have introduced merchandise into the commerce of the United States. And the Supreme Court has construed the term introduce with respect to introducing merchandise into the commerce of the United States. About 100 years ago, in a case called United States versus 25 packages of Panama hats, 231 U.S. at 361, and in 1909, Congress amended the criminal forfeiture statute for similar violations where it added introduce to enter or attempt to enter. And the reason was exactly to close a loophole like the one that Mr. Choudhury seeks to open in this case. And the Supreme Court concluded that enter or introduce is necessarily much more broad and includes a number of actions that go far beyond simply posting an entry with customs, far beyond simply providing entry documents to the agency. Now, going back to section 1592. Were those smuggling cases? Those were fraudulent entry cases, fraudulent valuation cases. In fact, the Panama hats case involved undervaluation of invoices that were submitted to the U.S. consulate in a foreign country before the merchandise was officially entered to customs.  That's correct. Ultimately, it was the ultimate consignee who was held liable, who was not the importer of record. But I want to go back to the notion that how can you be negligent for failing to disclose something unless there was a duty to disclose? And the duty has to arise from something. And the duty in this case arises from the statutory provision that applies to the importer of record. Well, no, the duty arises from section 1592A, which is a prohibition on entering or introducing or attempting to enter or introduce merchandise under material false statements. And if you look at the facts of this case… No, it's a prohibition on behaving in a negligent or fraudulent fashion. You have to establish negligence or fraud first, right? And we established negligence by Mr. Chaudhary. And the stipulated facts here are very clear. And the facts that the trial court relied on are very clear. Mr. Chaudhary, using a different importer in 2002, entered a number of suits and, like this case, failed to declare… The facts are bad for him. I get that. But you dropped your crop appeal on the fraud count. Why did you do that? We elected to proceed on the gross negligence claim to conclude this matter. So there's a shortcut here. I mean, you could have pursued the fraud claim, established fraud as to the corporation through the acts of their corporate representative, and then charged him with aiding and abetting, and there wouldn't have been an issue. But there's no need to do that because Mr. Chaudhary himself had a duty. Customs told him, Customs informed him in 2002, that he was required to declare the value of the fabric in the suits he imported. How does he have an independent duty when he elects the alter ego of the corporation? How does he have an independent duty when he's acting in his capacity as a corporate officer? Aren't we wiping out every state law as it relates to the corporate shield? No, not at all, because he has a duty to Customs under Section 1592A to not act negligently when making statements to the agency, and it's Mr. Chaudhary who himself provided all of the invoices to his Customs broker to provide to Customs. He was acting as an officer of the corporation. Don't you need to pierce the corporate veil in order to get to him under 1591? No, you don't need to pierce the corporate veil. 1592, sorry. Why not? Well, the important term to look at in the statute here is the term person, and Mr. Chaudhary, under the statute, who did Congress intend to prohibit from acting in this manner when it enacted a statute that prohibited a person from taking certain actions? And if you look at the Golden Ship case, the trial court looked at the legislative history of the enactment of Section 1592 and held that person has the same meaning as that class of people who could be liable under the previous statute, which was any consignor, seller, owner, importer, consignee, agent, or other person or persons. That's a very broad definition. It's anybody who is involved in a Customs transaction and who actually has to make a decision in furtherance. But what Congress wants to override, the state law protections for individuals who are acting on behalf of a corporation, it knows how to do it. I mean, the Sarbanes-Oxley is a classic example. Under the security laws before Sarbanes-Oxley, the corporate officers were protected because only the corporation had the duty to disclose. And now, under Sarbanes-Oxley, Congress has expressly said, no, those corporate officers can be charged. If it wanted to charge corporate officers here, it could have done so expressly. Well, first of all, Mr. Choudhury never made that contention or cited Sarbanes-Oxley. And importantly here, Congress used the word person, and it could have used importer of record. In fact, as Mr. Choudhury contends. But importer of record incorporates a lot of individuals. I mean, you don't have to be a corporation to import. And it talks about an importer of record includes consignees and others and their agents. So the reality is, by using person, it sweeps all the potential importers of record into the statute, does it not? Not necessarily. In fact, why would the statute have previously, with the same meaning, included any consignor, seller, owner, importer, consignee, agent, or other person or persons? Why would it have been so broad? It could have simply said importer, and then if any of those other individuals were taking on the role as importer, they would have been swept in. What was Mr. Choudhury's actual role here? What does the record show that he did? Mr. Choudhury arranged to have the suits produced. He would acquire the fabric. Another company would sew the suits. I understand that. But in relation to customs, what did he do? He would, well, first of all, while the shipments were in transit, he would decide which corporation would act as the importer of record. That's stipulation of fact number 15. So while the suits were in a container on their way across the Pacific Ocean, he would decide which of the corporations he controlled would act as importer of record. Then he would produce invoices, which he would provide to his customs broker, who then provided them to customs, along with all of the other information for putting together entry documents. He would then take possession of the suits once they reached the United States. Well, is it your position, Counsel, in response to that question, that Choudhury basically was the corporation, that is the corporation and Choudhury were the same? Is that your position? Well, we do agree that the facts can lead to that conclusion, but Mr. Choudhury was the person who was responsible for misrepresentations that were made to customs, and he acted himself. Well, it was Treck who made the misrepresentations because it was Treck who brought the stuff in. Isn't that right? Well, it was also Mr. Choudhury who personally would review and provide the invoices. So he was the person who actually was responsible for the misrepresentations, and in fact— He prepared the invoices that were submitted to customs. Pardon me? He prepared the invoices, the false invoices that were submitted to customs. He would review them, yes. He was—I believe he was responsible for actually producing those invoices, for generating them. Well, you're telling us—let's put aside him. What if we had General Motors and we had a mid-level CFO who's filling out documents, and you say that he acted negligently in filling out those documents? Under your theory, he's chargeable under 1592A1 without any need to prove fraud, without any need to prove aiding and abetting, and he's liable for all the duties personally. Is that right? Well, it depends on whether he actually owes a duty under those circumstances. If his acts are ministerial, maybe not, but if he personally does owe a duty and signs his name to those documents, yes, he could be liable. Okay, good. Then how did Shadipouri owe a duty? He owed a duty— And the CFO of General Motors does not facially owe a duty. Well, everyone owes a duty of care when they are preparing documents to provide to customs. So Mr. Shadipouri clearly owed that duty. In fact, he had been warned personally, not on behalf of Trek Leather, not on behalf of the previous importer. So under that theory, then, the CFO of General Motors is liable for all the customs. He could be held liable depending on what was expected of him under the facts and circumstances of that particular case. But everyone owes a duty when they're filling out forms. Yes, but if you look at the history of previous customs cases, when the government goes after corporate officers, if you look at priority products, there's a long line of cases before this court and before the Court of International Trade where corporate officers were personally liable for their own actions and their own material misstatements of fact to customs. Under which provision? Under 1592A1A, there was a long history of – there was a clear duty that was owed by those people. Those people owed an actual duty, and they were personally responsible for misrepresentation. So what you're saying is that everyone falls into this category, every corporate officer, but that we can trust the government because they only go after the really bad ones? To some extent, there is prosecutorial discretion that goes on. But the alternative here is to come up with a bright-line rule that says no corporate officers. You don't have to really pay attention to the duty owed by your corporation to the government because you won't be told. You don't have to go that far. We're a court of errors, and I'm trying to figure out exactly what is the – we don't make them, we correct them. What is the error that the trial court made? Did the trial court apply this person to the single owner as a general proposition? Did he consider the single owner an alter ego? What is it that you think the trial court did to get that client liable? How do you understand the trial court's position? The trial court's position was, and this is what was argued below, was that Mr. Shadipuri is not a person under Section 1592A, and therefore he cannot be personally liable unless he's aiding and abetting, knowingly aiding and abetting a fraud. Is that what the trial court held? No, that's not what the trial court held. I'm trying to find out what do you understand the trial court to have held. He held that the term person has its ordinary meaning, which can be anyone involved in the importation process, and that the statute has a prohibition on certain actions, and that Mr. Shadipuri fell into that prohibition. And the corporate line doesn't protect him. The fact that he is not the corporate importer doesn't help him. Is that your understanding of the trial court? Yes, because he was personally involved. In other words, someone doesn't become liable merely because the corporation does something, and he didn't prevent the corporation from acting negligently. He's only liable if he personally was involved with the false documents. Is that true? That's absolutely true. And that was the trial court's understanding? Is that what we're to understand? Exactly. The trial court's understanding was that Mr. Shadipuri himself committed the violations. He personally was warned not to import the merchandise in this manner, and he provided the invoices, the false invoices to customs, after he'd been warned not to do that. That's exactly what occurred here, and there's no basis in Section 592 or this court's precedent to hold that he cannot be personally liable for his own violations of a clear statute. All right. Thank you, Mr. Toomey. Mr. Galvin, you have a little over two minutes and 40 seconds. Thank you, Your Honor. Do you agree, Mr. Galvin, that that's what the trial court did? Absolutely not, Your Honor. Absolutely what? Not. Not? I cite pages 8 and 9 of the trial court's decision below, in which it quotes, the language of 592 leaves room for those other than the importer of record to be held accountable for violations, citing the CIT decisions in U.S.C. Matthews and United States v. Golden Shipping. I'm not going to reiterate our discussion of that, fraud and the like. I'm sorry, but as I read those paragraphs, what the trial court said was, any person who engages in the behavior prohibited by 5928 is liable there under, regardless of whether that person is the importer of record or not. That's correct. That's what the government just said the trial court held. That's correct, and fortunately. And do you agree that that's what the trial court held? That's what the trial court held, Your Honor, citing the CIT precedent. Okay. That was my question, and your answer is simply you don't agree with that. The precedent cited, I believe, is what was never appealed to this court. And the question, I think the seminal question for this court is, is that a correct statement of the law? Well, how do you deal with the fact that 592, as it was originally drafted, did include a whole host of individuals who fell outside the definition of importer of record? I don't believe it fell outside the definition of importer of record. 1484 was amended, I believe, in 93 to tighten it up, who could be eligible for importers of record. And it's through customs of. So you're saying that the original 592 and the original 1484 were identical in terms of their definition of. . . Your Honor, I haven't juxtaposed, I haven't compared the original with present 1592. But I think as you pointed out, we're talking about currently 1484 allows owners, purchasers, and consignees, which has been construed by customs headquarters to include any consignee other than a nominal consignee, that is a consignee with a financial interest, to act as importer of record. Does that encompass the whole world? I don't believe so. I believe this is an overly broad statement that it encompasses anyone. So your view is that even if a corporate officer personally prepares the document, signs it, false document, negligently false document, submits it to customs, there's no liability? That's an interesting hypothetical. It's not presented here. Well, pretty close. No, it's not, Your Honor. What's the answer to the hypothetical? The hypothetical is, quite frankly, I don't know. But in this case, no, Mr. Choudhury prepared nothing, notwithstanding counsel's statement of the contrary. Who prepared the document? The foreign supplier. And indeed, in the 72 entries at bar. . . Based on information that Mr. Choudhury supplied. I'm sorry? Based on information that Mr. Choudhury supplied. No. The corporate assembler said, I'll assemble a suit for $5 a suit. He charged $5 a suit. That's what his invoice shows. In some instances, only a handful of the 72 entries, the corporate assembler, the foreign assembler, also put down the values of the material assists Choudhury had provided.  In the bulk of the situation, the value of the material assists supplied to the foreign assembler were not shown, the value, on the foreign assembler's invoices, which were presented to customs to make entry and clear the merchandise. However, in the bulk of instances, the foreign assembler noted that there were material assists. Well, if your argument is that he never filled out a form and therefore couldn't have been negligent. Why didn't you make that argument in your brief? This is the first time I've ever heard this. Because that argument goes to fraud. And as we said below. It also goes to negligence. And the court, I'm sorry? It also goes to negligence, doesn't it? We didn't dispute the negligence here. What we disputed and which we prevailed on was the government's assertion that the corporate entity and Choudhury committed fraud. Nobody would be this stupid to say to customs on the invoices supplied by the foreign suppliers, hey, there are material assists, virtually in every instance. Unfortunately, in most instances, they didn't put down the value. Oh, we're going to slip this back up. Mr. Galvin, we're over our time. I'm sorry. I think that's it. We thank both counsels. Thank you.